**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**QUENTIN LAGRANDE,**

                                **Plaintiff,**

          **v.**                                                    **1:06-CV-467**
                                                                    **(FJS/DRH)**

**DECRESCENTE DISTRIBUTING CO., INC.,**

                                **Defendant.**
_____

**APPEARANCES**                          **OF COUNSEL**

**QUENTIN LAGRANDE**
Albany, New York 12210
Plaintiff _pro se_

**GIRVIN & FERLAZZO, P.C.**               **CHRISTOPHER P. LANGLOIS, ESQ.**
20 Corporate Woods Boulevard
Second Floor
Albany, New York 12211-2350
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Currently before the Court is Defendant's motion to dismiss, to which Plaintiff did not file

a response.

### II. BACKGROUND

Plaintiff commenced this action on April 14, 2006, asserting claims of unlawful sex

discrimination, racial discrimination, and retaliation in violation of Title VII of the Civil Rights

Act of 1964, as amended.  *See* Dkt. No. 1.

In a Memorandum-Decision and Order dated June 19, 2006, the Court directed Plaintiff to file an amended complaint within thirty days to remedy various pleading deficiencies.  *See* Dkt. No. 3.  In compliance with that Order, Plaintiff filed an amended complaint on July 17, 2006.  *See* Dkt. No. 4.  In a Memorandum-Decision and Order dated December 6, 2006, the Court deemed the amended complaint acceptable except for the lack of a statement of relief and directed Plaintiff to file such a statement within thirty days.  *See* Dkt. No. 6.  On December 14, 2006, Plaintiff filed a separate statement of relief.  *See* Dkt. No. 7.

In his amended complaint, Plaintiff alleges that, while in Defendant's employ, he "was subjected to sexual harassment, racial harassment; and also retaliated against by the owners [of Defendant employer]."  *See* Amended Complaint at 1.  Plaintiff also claims that he was "subjected to a hostile working environment" and that Defendant allowed his working environment to become abusive, hostile and filled with discriminatory intimidation."  *See id.*

Specifically, Plaintiff asserts that, "[o]n or about November 24, 2003 – Peter Kniss a co-worker . . . made racial comments about 'Black men' being lazy, and about 'Black men' using 'White Females' to take care of them."  *See id.* at ¶ 1.  Plaintiff further alleges that he told Mr. Kniss that he did not appreciate the comments and that he also told JoAnne Hickey, Human Resources Assistant.  *See id.*  Plaintiff claims that Ms. Hickey did not think his complaint was sufficient even though Plaintiff could give her names of people who heard and witnessed the comments, that she doubled his work load, and that she threatened to terminate his employment. *See id.*

Furthermore, Plaintiff alleges that, "[o]n or about January 1, 2004 – Aaron Schrader

-2-

District Manager at [Defendant] began to sexually harass [him]."  *See id.* at ¶ 2.  Plaintiff

contends that

> [t]he sexual harassment included but was not limited to Mr.
> Schrader saying to [him] that when he sees a nice lady that he
> wants "Fuck her".  He also showed [him] another female and
> indicated that he wanted to put his finger "On her Pussy".  He
> would make comments to [Plaintiff] about females' breasts . . .
> [and] once . . . in a store, he was [sic] a couple of young girls and
> he said . . . that he would like to get them drunk, so that he can
> fuck them.

*See id.*

Plaintiff also complains that in March 2004, "a female customer . . . complained to [him]

about Mr. Schrader looking at her in a sexual way . . . [and that when he] related this

conversation to Mr. Schrader he retaliated against [Plaintiff] by giving [him] a much higher work

load and gave negative feedback about [him] to the Human Resources Director."  *See id.* at ¶ 3.

In addition, Plaintiff contends that, "[o]n or about March 19, 2004 – [he] told Aaron

Schrader that [he] didn't want to hear any of his sexual comments about females.  On that same

day Aaron Schrader, Jim Izzo, and Peter Kniss had destroyed beer displays that [Plaintiff] buil[t].

*See id.* at ¶ 4.  Plaintiff complains that his work continued to be destroyed and sabotaged and that

Mr. Schrader told him that he could make this stop if Plaintiff would do what he wanted him to

do.  *See id.*

Plaintiff asserts that, "[o]n or about April 2, 2004 – [a]fter telling Aaron Schrader that

[he] didn't appreciate his unlawfully [sic] behavior; [Mr. Schrader] scheduled [Plaintiff] to work

from 4:30am to about midnight."  *See id.* at ¶ 5.  Furthermore, Plaintiff alleges that, "[o]n or

about April 13, 2004 – Don Miller, and Jim Izzo provided merchandising training for only the

white workers.  [Plaintiff] was not allowed to attend this merchandizing training even though it was apart [sic] of the job."  *See id.* at ¶ 6.  Plaintiff further contends that Mr. Schrader's unlawful "behavior continued week after week . . . [and that] Mr. Aaron Schrader threaten[ed] to get [Plaintiff] 'Fired'."  *See id.* at ¶ 7.

On or about May 21, 2004, Plaintiff complained to Ray Corandi, Security/Operations Manager at Defendant's facility about Mr. Schrader's threats.  *See id.* at ¶ 8.  Shortly thereafter, Plaintiff complained to C.J. DeCrescente about Mr. Schrader's sexual behavior.  *See id.*  Mr. DeCrescente responded that, "if Aaron said it, he was just playing."  *See id.*  Plaintiff also complained to Karen Dumas, Human Resources Director, who would not let Plaintiff file a formal charge of sexual harassment against Mr. Schrader.  *See id.*

Plaintiff asserts that Mr. Schrader was allowed to go into the stores that Plaintiff was responsible for merchandising and sabotage his work.  *See id.* at ¶ 9.  Plaintiff contends that Mr. Schrader was also allowed to get his friends to say that Plaintiff's work was not good and they would not allow Plaintiff in their stores.  *See id.*

Plaintiff further complains that, "[o]n or about June 17, 2004 . . . Carmine DeCrescente, C.J. DeCrescente, John DeCrescente, and Steve Rynchik threaten[ed] [to] terminate [Plaintiff's] employment, forced [him] to agree to subject [himself] to a video record [sic] interview in Mr. C.J. DeCrescente office."  *See id.* at ¶ 10.  Plaintiff contends that he was under duress to say what they wanted him to say and that they warned him not to go to the police.  *See id.*

Finally, Plaintiff asserts that, "[o]n July 1, 2004, July 2, 2004, July 3, 2004, and also July 4, 2004 – [he] was subjected to physical threats by and racial harassment, being called 'Nigger,' by Chris Thorsey (Manager at DeCrescente)."  *See id.* at ¶ 11.  Plaintiff also states that "Chris

Thorsey made it mentally, and physical [sic] impossible for [him] to work. [His] working environment was hostile." *See id.*  Plaintiff contends that Defendant's owners and Senior VP Don Miller "knew about what was going on and didn't [do] nothing about it." *See id.*

## III. DISCUSSION

### A.    Standard of review

Under Local Rule 7.1(b)(3), a plaintiff consents to the granting of a motion if (1) he fails to oppose the motion, (2) the defendant properly filed the motion, and (3) the defendant has, through the motion, met its burden of demonstrating entitlement to the relief requested in the motion.  *See* L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as required by this Rule shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause be shown.").  Moreover, as the court recently noted in *Mosby v. Trabout*, No. 9:06-CV-1165, 2008 WL 623122 (N.D.N.Y. Mar. 4, 2008), "an inquiry into whether a movant has met its 'burden to demonstrate entitlement' to dismissal under Local Rule 7.1(b)(3) is a more limited endeavor than a review of a contested motion to dismiss. . . . [U]nder such an analysis, the movant's burden of persuasion is lightened such that, in order to succeed, his motion need only be 'facially meritorious.'"  *Id.* at *12 (footnote omitted).

After Defendant filed its motion to dismiss, Plaintiff requested an extension of time in which to respond to the motion, *see* Dkt. No. 15, which this Court granted, *see* Text Order dated March 9, 2007.  Subsequently, Plaintiff submitted a letter to the Court, which the Court rejected,

noting that "[a]ny relief requested must be in the form of a motion that complies with Local Rule

7.1 (copy enclosed)." *See* Dkt. No. 16.  The Court also reminded Plaintiff that he had "a deadline

of April 13, 2007 to respond to the Defendant's pending motion to dismiss. ***Failure to respond***

***may result in the dismissal of this action***." *See id.* (emphasis added).

      Approximately one month later, Plaintiff submitted another letter to the Court, which the

Court also rejected.  *See* Dkt. No. 17.  In its rejection Order, the Court advised Plaintiff that

> [y]our letter motions are being returned to you as they fail to
> comply with Local Rule 7.1.  You were previously provided a copy
> of Rule 7.1 on March 27, 2007.
>
> In addition, you are advised that no stay of this action will be
> granted unless you retain an attorney, and he or she enters an
> appearance in this action and seeks such a stay.  Thus, you must
> file a response to the defendant's motion to dismiss on or before
> May 11, 2007. ***Your failure to file such a response may result in***
> ***dismissal of this action***.  No further adjournments of this response
> deadline will be granted.

*See id.* (emphasis added).

      Finally, on May 15, 2007, the Court denied Plaintiff's motion for a ninety-day "emergency

stay." *See* Dkt. No. 19.

      Despite being granted two extensions of time in which to file a response to Defendant's

motion to dismiss and being warned on two occasions that his failure to file such a response

could result in the dismissal of this action, Plaintiff never filed any papers in opposition to

Defendant's motion.

B.      **Plaintiff's claims**

       ***1. Plaintiff's sex-based hostile work environment claim***

       To establish a hostile work environment claim, a plaintiff must allege that "the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of [his] employment were thereby altered." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (citations omitted).  There is both a subjective and an objective element to this test: "the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." *Id.* at 374 (quotation omitted).  Generally, "incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Id.* (quotation omitted).  Thus, "[i]solated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Id.* (citations omitted).

       Finally, "it is 'axiomatic' that in order to establish a sex-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of [his] sex." *Id.* (citations omitted).  To show that the alleged harasser's conduct was "because of his sex," a plaintiff may either "[1] show that the alleged harasser's behavior constituted an earnest sexual solicitation . . . [2] demonstrate that the harasser displayed a general hostility to males in the workplace . . . [or 3] under certain circumstances . . . offer direct comparative evidence about the harasser's treatment of men and women. . . ." *English v. Pohanka of Chantilly, Inc.*, 190 F. Supp. 2d 833, 843 (E.D. Va. 2002) (internal citations and footnote omitted).

       In this case, Plaintiff does not allege that Mr. Schrader solicited sex from him nor does he allege that Mr. Schrader displayed a general hostility to males in the workplace.  Moreover,

Plaintiff asserts that a female customer complained to him about Mr. Schrader looking at her in a sexual manner, which defeats any claim that Mr. Schrader treated women differently than men. Therefore, even accepting as true Plaintiff's allegations and drawing all reasonable inferences from those allegations, it is clear that, as a matter of law, Plaintiff cannot maintain his sex-based hostile work environment claim. Thus, Defendant has met its burden to demonstrate that its motion is facially meritorious. Accordingly, the Court grants Defendant's motion to dismiss Plaintiff's sex-based hostile work environment claim.

### 2. Plaintiff's race-based hostile work environment claim

With respect to his race-based hostile work environment claim, Plaintiff alleges that, on November 24, 2003, Peter Kniss, a co-worker, made racial comments about "Black men" being lazy and about "Black men" using "White Females" to take care of them. Furthermore, he alleges that on July 1, 2004, through July 4, 2004, Chris Thorsey called him "Nigger" and physically threatened him.

Even accepting these allegations as true, they are insufficient to state a race-based hostile work environment claim. These incidents involved two different people and were separated by more than seven months. Thus, they were at best "isolated" incidents from which no reasonable trier of fact could conclude that the harassment was pervasive or severe. Therefore, Defendant has met its burden to demonstrate that its motion is facially meritorious. Accordingly, the Court grants Defendant's motion to dismiss Plaintiff's race-based hostile work environment claim.

### 3. Plaintiff's disparate treatment claim

Under Title VII, an employer cannot "intentionally discriminat[e] against an employee because of that employee's "'race, . . .'" *Kravitz v. N.Y. City Transit Auth.*, No. 94-CV-5910, 2001 WL 1646513, *5 (E.D.N.Y. Dec. 18, 2001) (quoting 42 U.S.C. § 2000e-2(a)) (other citation omitted). To state such a claim, a plaintiff must show that "(1) he belongs to a protected class; (2) he was qualified to perform the position's duties; (3) there was an adverse employment action; and (4) this employment action occurred under circumstances giving rise to an inference of discrimination." *Id.* (citation omitted). To constitute an adverse employment action,

> a "change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibility.' 'A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.'"

*Id.* (quotation omitted).

Plaintiff's amended complaint contains one allegation that could be interpreted as a claim that Defendant treated him differently because of his race: on April 13, 2004, Don Miller and Jim Izzo provided merchandizing training for only the white workers, and Plaintiff was not allowed to attend even though it was part of his job. *See* Amended Complaint at ¶ 6. Assuming for purposes of this motion that Plaintiff belongs to a protected class and is qualified to perform the duties of his job, Plaintiff's claim still fails because there is nothing in his amended complaint from which a trier of fact could infer that he suffered an adverse employment action. Although he contends that Defendant did not allow him to attend **one** training meeting, he does not assert that his failure to attend that meeting harmed him in any way. In other words, he does not

indicate, nor can the Court draw an inference from this allegation, that his inability to attend the

meeting had any adverse effect on his job responsibilities or on his ability to continue to pursue

his career.  Therefore, Defendant has met its burden to demonstrate that its motion is facially

meritorious.  Accordingly, the Court grants Defendant's motion to dismiss Plaintiff's disparate

treatment claim.


### 4. Plaintiff's retaliation claim

To state a claim for retaliation under Title VII, a plaintiff must demonstrate "(1)

participation in a protected activity that is known to the defendant, (2) an employment decision or

action disadvantaging the plaintiff, and (3) a causal connection between the protected activity and

the adverse decision."  *Kravitz*, 2001 WL 1646513, at *8 (citation omitted).  "A causal

connection 'may be established either *indirectly* by showing that the protected activity was

followed closely by discriminatory treatment, or through other evidence such as disparate

treatment of fellow employees who engaged in similar conduct, or *directly* through evidence of

retaliatory animus directed against a plaintiff by the defendant.'"  *Id.* (quotation omitted).

To establish that complaints are "protected activity," a plaintiff "is not required to

establish that the conduct complained of actually amounted to a violation of Title VII."

*Drummond v. IPC Int'l, Inc.*, 400 F. Supp. 2d 521, 534 (E.D.N.Y. 2005).  Instead, a plaintiff

"'need only demonstrate that []he had a "*good faith, reasonable belief* that the underlying

challenged actions of the employer violated the law."'"  *Id.* (quotation omitted).  Although "it is

possible for an employee reasonably to believe that specified conduct amounts to harassment,

even if that conduct would not actually qualify as harassment under the law[,] . . . [t]he Court

-10-

must assess the reasonableness of the plaintiff's belief in light of the totality of the circumstances." *Id.* (citation omitted).

As noted above, it is inherent in the definition of a sex-based hostile work environment that the conduct occurred because of one's sex.  Since Plaintiff does not allege, nor can the Court draw any inferences from his allegations, that he was subjected to the alleged hostility because of his sex, the Court finds that, because he could not reasonably have believed that Mr. Schrader's conduct violated Title VII, his complaints about that behavior do not constitute protected activity.

Likewise, with respect to his race-based hostile work environment claim, Plaintiff cannot have reasonably believed that two isolated incidents of race-based comments, occurring more than seven months apart, could constitute misconduct that was severe or pervasive.  Therefore, the Court finds that Plaintiff's complaints about the race-based comments do not constitute protected activity.

Finally, with respect to his disparate treatment claim, it is inherent in such a claim that a plaintiff suffer an adverse employment action because of his race.  Plaintiff does not allege that he was harmed in any way by the fact that Defendant did not allow him to attend one merchandizing meeting.  Therefore, the Court concludes that, because Plaintiff could not have reasonably believed that his employer's conduct violated Title VII, his complaints about this action do not constitute protected activity.

Accordingly, for all of the above-stated reasons, the Court grants Defendant's motion to dismiss Plaintiff's retaliation claims.

-11-

## IV. CONCLUSION

After carefully reviewing the entire file in this matter, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendant's motion to dismiss Plaintiff's amended complaint is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case.

**IT IS SO ORDERED.**

Dated: June 9, 2008
      Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge